Howard Marc Spector
TBA # 00785023
SPECTOR & COX, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
Hspector@spectorcox.com

COUNSEL FOR THE DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JSCo Enterprises, Inc. | § | Case Number 23-42151 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

### EXPEDITED MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY OF ORDER APPROVING SETTLEMENT AGREEMENT

JSCO, Inc. (the "Debtor") by and through its undersigned counsel, hereby files this motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of a settlement and compromise among the Debtor's estate and certain Debtor-related third parties and states:

1. The Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on November 9, 2023.

2. To date, the Debtor has elected to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.

3. On November 14, 2023, the United States Trustee for Region 6 appointed Brad W. Odell ("Trustee") as the Subchapter V Trustee in this case.

1

4. On April 26, 2024, BDO USA, P.C. filed its Motion of BDO USA, P.C. for Order Expanding the Duties of the Subchapter V Trustee (the "Expansion Motion", Dkt. No. 97). The Expansion Motion requested that the Court expand the Trustee's duties to the investigation of a 2022 conveyance (the "Transfer") of EverGlade Consulting ("EverGlade") to Durian International, in exchange for fixed monthly income owed pursuant to an unsecured annuity agreement (the "Annuity"). EverGlade has continued to provide the sole source of income for the Debtor, by enabling the funding of the Annuity payments.

5. Neither the Debtor, nor the parties to the transaction which were the subject to the Expansion Motion, opposed the Expansion Motion. The Court granted the Expansion Motion by entering the Agreed Order Granting in Part Motion of BDO USA, P.C. for Order Expanding the Duties of the Subchapter V Trustee (the "Expansion Order", Dkt. No. 140)

6. Pursuant to the Expansion Order, the Trustee's duties under the Bankruptcy Code were expanded to investigate the Transfer, as well as the potential liability of certain third-parties related to the Debtor.

7. The Trustee commenced his investigation of the Transfer by, *inter alia*, engaging a financial advisor, Lain, Faulkner & Co., P.C. ("Lain Faulkner"). Ultimately, the Trustee filed a detailed report (the "Report", Dkt. No. 185) on November 1, 2024. The Report was accompanied by a 20 page expert report from Lain Faulkner.

8. Following his Report, the Trustee and certain parties involved in the Transfer (the "Settling Parties") commenced settlement discussions to attempt to resolve the issues raised in the Report. Those efforts proved successful in March 2025, and the Trustee and the Settling Parties have reduced a proposed settlement to writing in the form of the Settlement Agreement attached hereto as <u>Exhibit 1</u> (the "Settlement Agreement").

9. The extensive and detailed discussions and negotiations between the Trustee and the Settling Parties have generated a mutually-beneficial agreement which will bring more certainty to the payments that the Debtor can use to satisfy claims against the estate, eliminate uncertainty in valuations used when the Transfer was originally structured, and incentivize the resolution of pending litigation against the Debtor.

10. The Settlement Agreement will, if it becomes effective, provide specific benefits the Debtor as follows:

   i. First, the parties agree to a non-discounted, restructured Annuity balance of $5,000,000;
   ii. Second, the Annuity will be paid with interest over a compressed time period of 48 months;
   iii. Third, the Annuity will be collateralized by the assets of EverGlade, LLC; Durian International, LLC; and Durian Foundation Trust;
   iv. Fourth, the Annuity will be guaranteed by Eric Jia-Sobota and Jerry Jia-Sobota; and
   v. Fifth, the ability to defer payments for any period of years, as contained in the current Annuity, is completely removed.

11. The Settlement Agreement does contemplate potential extensions of the Anniuty payment term if EverGlade can demonstrate a revenue decline of 10% or more over a three-month period on a year-over-year basis, but only one such extension is assured. If additional extensions are requested, they are subject to the sole discretion of the Trustee. The Settlement Agreement contemplates that the Trustee, or his replacement, shall continue post-confirmation if a plan is confirmed.

12. Finally, the Settlement Agreement contemplates a 10% early payoff discount if EverGlade pays all amounts owed on the Annuity within 36 months.

13. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Accordingly, the Court is authorized to approve the settlement, on the terms set forth in the Settlement Agreement.

14. In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Air Line Pilots Ass'n v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court. *In re Drexel Burnham*, 134 B.R. at 505. It is appropriate for the court to consider the opinions of the trustee or debtor in possession that a settlement is fair and equitable. *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994). In addition, the bankruptcy court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above."). In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvas the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T.*

*Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits). "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

15. In the instant case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Debtor requests approval of the Settlement Agreement so that it can be consummated under a plan. The following factors weigh in favor of approving the Settlement Agreement:

    a    <u>First</u>, as noted in the Report, litigation based on the Transfer would be expensive and protracted, and would divert significant resources of the Debtor, and significant time and effort that would be necessary to complete it. Moreover, no one can be certain of the results of any such litigation.

    b    <u>Second</u>, the proposed settlement, once effective, assures a continued revenue stream to the Debtor to pay substantial amounts to its creditors. The Settlement Agreement substantially decreases the time horizon for payments to creditors and provides security and third-party guarantees for the Debtor if payments are not made.

    c    <u>Third</u>, the releases of claims are only those reasonable in scope and necessary to incentivize the new consideration being provided to the Debtor. They have no impact on potential direct claims held by parties other than the Settling Parties. *See, e.g.*, *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 644 (Bankr. S.D.N.Y. 2012) (finding

releases "reasonable and necessary to accomplish the purposes" of the settlement agreement where they did not impact potential direct claims by non-settling parties).

   d  <u>Fourth</u>, the Settlement Agreement is the product of arm's length negotiations between the Trustee and the other Settling Parties. Debtor's counsel was wholly uninvolved in the negotiations.

   e  <u>Fifth</u>, The Trustee's decision to recommend the Settlement Agreement is based on his detailed and lengthy investigation and extensive work in preparing the Report.

16. Accordingly, the Debtor submits that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

WHEREFORE, the Debtor respectfully requests that the Court enter the proposed Order attached hereto as <u>Exhibit 2</u>, approving the Settlement Agreement and granting such additional and further relief as the Court deems just and appropriate.

            Respectfully submitted,

            By<u>: /s/ Howard Marc Spector</u>
              Howard Marc Spector
              TBA #00785023
              Spector & Cox, PLLC
              12770 Coit Road, Suite 850
              Dallas, Texas 75251
              (214) 365-5377
              FAX: (214) 237-3380
              hspector@spectorcox.com

            COUNSEL FOR THE DEBTOR

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of April __, 2025, by and between the Bankruptcy Estate of JSCo Enterprises, Inc. (the "Bankruptcy Estate") and the Durian parties, including the Durian Foundation Trust, Durian International, LLC, Durian Fiduciary Services, LLC, EverGlade Consulting LLC, Eric Jia-Sobota and Jerry Jia-Sobota (collectively, the "Durian Parties"). The Bankruptcy Estate and the Durian Parties are collectively referred to herein as "the Parties".

## RECITALS

**WHEREAS**, JSCo Enterprises, Inc. ("JSCo") and Durian Foundation Trust are parties to a Private Annuity Agreement effective as of January 1, 2023 (the "Annuity Agreement");

**WHEREAS,** on November 9, 2023, JSCo filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, Case No. 23-42151 (the "Bankruptcy Proceeding") under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") and elected to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code;

**WHEREAS,** on November 14, 2023 the United States Trustee for Region 6 Appointed Brad W. Odell, Esq. as Subchapter V Trustee in the Bankruptcy Proceeding;

**WHEREAS**, in or around July 19, 2024 the Trustee's duties were expanded to investigate a certain transfer between JSCo and the Durian Foundation Trust;

**WHEREAS,** in or around November 1, 2024 the Trustee filed a Subchapter V Trustee's report in which it was alleged, *inter alia*, that the certain transfer was most likely avoidable under §548 of the Bankruptcy Code. However, notwithstanding that finding the Trustee recommended in his report a settlement between the Bankruptcy Estate and the parties alleged to be associated with the certain transfer;

**WHEREAS,** the Trustee and the Durian Parties thereafter engaged in good-faith negotiations to resolve the allegations and claims discussed by the Trustee in his report; and

**WHEREAS**, the Parties now desire, without admission of fault, liability or wrongdoing by any party, to resolve completely and for all time all disputes, claims or controversies, including related to the allegations contained in the Trustee's report, between the Parties by this Agreement;

**NOW THEREFORE**, to avoid the risks and expenses of litigation, in consideration of the foregoing and the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, the Parties hereby stipulate and agree as follows:

## TERMS OF SETTLEMENT

1. **INCORPORATION OF RECITALS**: The above recitals are incorporated herein as though set forth in full in this Agreement

2. **RESTRUCTURE OF ANNUITY AGREEMENT**. The parties shall execute an Amended Private Annuity Agreement ("Restructured Annuity Agreement") containing the following terms:

    a) Restructured Annuity Balance: $5,000,000.
    b) Effective Interest Rate: 7.50% fixed (represents current prime rate)
    c) Term: 48 months. Payments to begin 30 days after approval of a Bankruptcy Plan and due on the last day of each subsequent month thereafter.
    d) Payment Amount: $120,894.51 per month
    e) Collateral: all assets of EverGlade Consulting, LLC; Durian International, LLC; and Durian Foundation Trust
    f) Guarantees: personal guarantees to be provide by Eric Jia-Sobota and Jerry Jia-Sobota.
    g) Default: There shall be two (2) defaults permitted with written notice and a ten (10) business day opportunity to cure per calendar year. Upon the third default in a calendar year, there shall be no opportunity to cure. The ability to defer payments for any period of years, as contained in the current Annuity Agreement, shall be completely removed.
    h) Extension of Term: If EverGlade can demonstrate a revenue decline of 10% or more over a three-month period on a year-over-year basis, the annuity payment term will automatically be extended by at least one year (the "Revenue Decline Extension"). EverGlade shall be entitled to only one automatic Revenue Decline Extension. EverGlade may request additional Revenue Decline Extension(s) from the Plan Trustee administering the annuity to address cash flow concerns; however, approval of any additional Revenue Decline Extension is at the sole discretion of the Plan Trustee.
    i) Post-Confirmation Trustee. JSCo's plan of reorganization shall provide for the appointment of a Plan Trustee. The Plan Trustee will administer the payments on the Restructured Annuity Agreement. This would include enforcement of the Restructured Annuity Agreement. Distributions to creditors would be governed by the Debtor's (JSCo's) confirmed plan, which will contain provisions of not distributing funds to creditors until their claims are allowed.

    j) Early Payoff Discount. There shall be a 10% early payoff discount if EverGlade pays JSCo within 36 months the total amount under the Restructured Annuity Agreement less the early payoff discount, calculated as follows: total payments of principal and interest - $5,802,936.47; discount amount $580,293.65; Amount needed to be paid by month 36 - $5,222,642.82.

A true and correct copy of the Restructured Annuity Agreement is attached to this Agreement as Exhibit "A."

    3. **REPRESENTATIONS AND WARRANTIES**. The Bankruptcy Estate and the Durian Parties each represent and warrant that:

    a) They have the full power and authority to enter into and perform their obligations under this Agreement.
    b) The execution, delivery, and performance of this Agreement have been duly authorized and do not conflict with or violate any other agreement or instrument to which they are a party.
    c) There are no pending or threatened claims, actions, or proceedings that would materially adversely affect their ability to perform their obligations under this Agreement.

    4. **BANKRUPTCY COURT APPROVAL**. This Agreement is subject to the approval of the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court") as part of a bankruptcy plan for the Bankruptcy Estate, which plan shall incorporate the terms set forth in Paragraph 2, above. The parties agree to cooperate fully and in good faith in seeking such approval of a Bankruptcy Plan, including the preparation and filing of any necessary motions, applications, or other documents required by the Bankruptcy Court.

    5. **RELEASE**. For good and valuable consideration the sufficiency of which is hereby acknowledged, upon Bankruptcy Court Approval as set forth in Paragraph 4, above, the Bankruptcy Estate, its respective present and former, direct and indirect, parents, subsidiaries, affiliates, employees, officers, directors, shareholders, investors, managers, members, agents, attorneys, representatives, fiduciaries, as well as its predecessors, successors, assigns, divisions, parent and holding companies, and related entities, individually and in their representative capacities (hereinafter collectively referred to as the "RELEASOR"), releases and forever discharges the Durian Parties, Daniel Paterson and Andrew J. Stiles, together with their respective present and former, direct and indirect, parents, subsidiaries, affiliated or associated companies, employees, officers, directors, shareholders, investors, managers, members, agents, attorneys,

representatives, fiduciaries, as well as their predecessors, successors, beneficiaries, assigns, divisions, parent and holding companies, and related entities, individually and in their representative capacities (hereinafter collectively referred to as the "RELEASEES") from all actions, damages, losses, expenses, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands of any kind or nature whatsoever, in law, admiralty or equity, whether known or unknown which against the RELEASEES, the RELEASOR ever had, now have or hereafter, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising from the beginning of the world to the day of the date of this Agreement, however, this Release does not and shall not be deemed to release any obligations of EverGlade to make all payments required under the Restructured Annuity Agreement or any claims arising out of the obligations under this Agreement, including the personal guarantees of Eric Jia-Sobota and Jerry Jia-Sobota referenced in Paragraph 2, above.

6. **GOVERNING LAW AND JURISDICTION**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice of law or conflict of law provisions. Any disputes arising under or in connection with this Agreement shall be resolved exclusively in the United States Bankruptcy Court for the Eastern District of Texas, and the parties hereby consent to the jurisdiction of such court for this purpose.

7. **SEVERABILITY**. If any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof. This Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, unless such construction would operate as an undue hardship on either party or would constitute a substantial deviation from the general intent of the parties as reflected in this Agreement.

8. **ENTIRE AGREEMENT**. This Agreement constitutes the entire agreement between the parties

with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether oral or written, of the parties.

9. **AMENDMENTS**. This Agreement may be amended, modified, or supplemented only by a written instrument executed by all parties hereto.

10. **COUNTERPARTS**. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or electronic signatures shall be deemed original signatures for all purposes.

11. **WAIVER**. No waiver of any provision of this Agreement shall be effective unless set forth in a writing signed by the party making the waiver. No failure or delay by any party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

12. **FURTHER ASSURANCES**. Each party agrees to execute such other documents, including, but not limited to, the Restructured Annuity Agreement, all security instruments and third party pledges, and all personal guarantees, and take such other actions as may be reasonably necessary or desirable to further the purposes of this Agreement.

13. **NOTICES**. All notices, requests, demands, and other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered by email *and* personally, sent by nationally recognized overnight courier, or mailed by certified or registered mail, postage prepaid, return receipt requested, to the parties at their respective addresses set forth below:

> If to the Bankruptcy Estate:
> Spector & Cox, PLLC
> 12770 Coit Road, Suite 850
> Dallas, Texas 75251
> Attention: Howard Marc Spector
> Email: hspector@spectorcox.com
>
> If to the Plan Trustee:
> [ADDRESS]
> [CITY, STATE, ZIP]

     Attention:
     Email:

     If to the Durian Parties:
     Canales PLLC
     c/o Jason Canales, Esq.
     125 Park Avenue, 25th Floor
     New York, New York 10017
     Email: jason@canalespllc.com

14. **ATTORNEYS' FEES AND COSTS:** The Parties agree that each Party shall bear its costs, expenses, consultant and expert fees, and attorneys' fees arising out of and/or connected with the negotiation, drafting and execution of this Agreement, and all matters arising out of or connected therewith.

15. **AGREEMENT NOT AN ADMISSION**: The Parties have entered into this Agreement voluntarily and with full knowledge and understanding of its terms and import. It is expressly understood and agreed that this Agreement is a compromise of disputed claims and that this Agreement shall not be construed as, or deemed to be, evidence of an admission or concession of any fault or liability for any damages whatsoever on the part of any of the Parties hereto.

16. **ATTORNEY REVIEW**: Each of the Parties hereto has reviewed and/or had the opportunity to review all of the terms and provisions of this Agreement with counsel satisfactory to such party, understands each and every term and provision of this Agreement, agrees to each and every term and provision of this Agreement and hereby executes and delivers this Agreement voluntarily.

  IN WITNESS WHEREOF, the parties have executed this Settlement Agreement as of the date first written above.

**BANKRUPTCY ESTATE OF JSCO ENTERPRISES, INC.**

By: _____
Name:
Title: [TITLE]

**DURIAN FOUNDATION TRUST**

By: _____
Name:
Title: Trustee

**DURIAN INTERNATIONAL, LLC**

By: _____
Name:
Title: Manager

**DURIAN FIDUCIARY SERVICES, LLC**

By: _____
Name:
Title: Manager

_____
Eric Jia-Sobota, Individually

_____
Jerry Jia-Sobota, Individually

## **Exhibit A**

To be provided

**Exhibit 2**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JSCo Enterprises, Inc. | § | Case Number 23-42151 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

**[PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT**

Upon the motion dated (the "Motion") of the above-captioned Debtor (the "Debtor") for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a settlement and compromise of certain claims reflected in the Settlement Agreement attached hereto as Exhibit A (the "Settlement Agreement"); and the Court having jurisdiction to consider the Motion and the relief requested therein, ; and venue being proper before this Court; and upon consideration of the Motion, any objections thereto, briefs and arguments of counsel, and due and proper notice of the Motion having been provided, and it appearing that the notice of the Motion is sufficient, adequate, and timely under the circumstances of this case and that no other or further notice need be provided; and a reasonable opportunity to object or be heard regarding the Motion having been given to all such parties; and a full and fair opportunity having been afforded to litigate all issues raised in all objections, or which might have been raised, and all objections having been fully and fairly litigated;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

7

  A. After careful consideration of the record, the Court finds that the settlement of the claims resolved under the Settlement Agreement is within the range of reasonableness. The Court has canvassed the issues to evaluate the reasonableness of the settlement and finds that:

  a) a full litigation of the Claims resolved by the Settlement Agreement would be extremely complex, protracted and expensive

  b) the Settlement Agreement is in the best interests of the Debtor's estate, its creditors, and is supported by good business reasons;

  c) the Trustee has substantial experience and is competent in advising on complex bankruptcy and litigation matters and in negotiating commercial resolutions thereof;

  d) the Settlement Agreement was negotiated and proposed by the Trustee without collusion, in good faith, and from arm's length bargaining positions;

  e) Each of the releases provided for in the Settlement Agreement is an integral element of the Settlement Agreement and/or to its effectuation, confers material benefits on, and is in the best interests of, the Debtor's estate, and is essential to the overall objectives of the Settlement Agreement;

  f) It is in the best interests of the Debtor's estate, and its creditors to resolve the claims encompassed by the Settlement Agreement against each other as promptly as practicable and in a consensual manner.

  g) The Settlement Agreement brings greater certainty to the Debtor's estate and will permit progress toward a Plan.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

  1. The Motion is granted in all respects and the Settlement Agreement is approved pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

  2. Any objections to the Motion that have not otherwise been withdrawn or resolved are overruled.

  3. The Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.