Howard Marc Spector
TBA #00785023
SPECTOR & COX, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
EMAIL: hspector@spectorcox.com

**COUNSEL FOR THE DEBTOR**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JSCo Enterprises, Inc. | § | Case Number 23-42151 |
| | § | |
| Debtor. | § | (Chapter 11) |

> First Amended Plan of Liquidation
> Filed by the Debtor
> Dated: April 21, 2025

The Debtor, as debtor-in-possession, proposes this First Amended Plan of Liquidation under Chapter 11, Subchapter V of the Bankruptcy Code.

ARTICLE 1: DEFINITIONS, INTERPRETATION AND BACKGROUND

**1.1** *Definitions.*

The capitalized terms used herein shall have the respective meanings set forth below:

(a) "**Administrative Claim**" means a Claim entitled to priority under Sections 503[b] and 507[a][2] of the Bankruptcy Code in this Case of the Debtor.

(b) "**Allowed**" when used with respect to any Claim, except for a Claim that is an Administrative Claim, means [1] such Claim to the extent it is not a Disputed Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or [3] a Disputed Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or [B] as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

(c) "**Allowed Secured Claim**" All or that portion of a Secured Claim that (a) has become Allowed and as to which the Lien securing same is valid, perfected and enforceable under

applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law; (b) which is duly established in the appliable Case, but only to the extent of the value of the interest of the holder of such Secured Claim in the Debtor's interest in the assets which the Bankruptcy Court finds to be valid Collateral for such Claim (except if the class of which such Claim is a part validly and timely makes the election provided for in Section 1111(b)(2) of the Bankruptcy Code, in which case the entire amount of the Allowed Claim shall be an Allowed Secured Claim); and (c) less all payments which have been made to the holder of such Claim on account of such Claim on or after the Petition Date.

(d) "**Avoidance Actions**" means any and all pending or possible actions, proceedings, accounts, controversies, agreements, promises, claims, and rights, of the Debtor and its estate to avoid or recover a transfer of property or an interest of the Debtor in property, including actions arising under Sections 502, 510, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state, or common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

(e) "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

(f) "**Bankruptcy Court**" means the Bankruptcy Court unit of the United States District Court for the Eastern District of Texas, or such other court having jurisdiction over the Case.

(g) "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to Section 2075 of title 28 of the United States Code.

(h) "**BDO**" shall mean BDO USA, P.C., BDO USA, LLP and their Affiliates.

(i) "**BDO Litigation**" shall mean the following cases, and any transfers or appeals therefrom: (i) *BDO USA, LLP v. JSCo Enterprises, Inc.* (pending in the Superior Court of the State of Delaware, No. N22C-12-063 KSM CCLD); and (ii) *BDO USA, LLP, v. Eric Jia-Sobota and JSCo Enterprises, Inc., v. BDO Public Sector LLC and Wayne Berson* (pending in the Superior Court of the District of Columbia, Civil Action No. 2020 CA 2600 B).

(j) "**Business Day**" means any day on which commercial banks are open for business in Houston, Texas.

(k) "**Cash**" means legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America and which present an insignificant risk of changes in value.

(l) "**Cash Proceeds**" means the Cash received by the Plan Trustee from time to time from the remittance, sale or disposition, through litigation, settlement or otherwise, of the Liquidating Debtor's assets, after payment of the reasonable or necessary costs of such sale or other disposition, including Costs of Administration, reasonable fees and expenses of the Liquidating Debtor's or Plan Trustee's legal counsel and other professionals incurred in connection with obtaining the Cash Proceeds.

(m) "**Case**" means the Chapter 11 Case of the Debtor under the Bankruptcy Code.

(n) "**Causes of Action**" means any and all actions, causes of action, proceedings, controversies, liabilities, obligations, rights, suits, claims for money or refunds due, indebtedness (for borrowed money or in the nature of a guarantee), damages, judgments, Claims, objections to Claims, benefits of subordination of Claims, demands, debts, liens, contracts, agreements, promises,

representations, torts, damages, costs, losses, attorneys' fees, moneys due on account, obligations, judgments or liabilities of any kind whatsoever, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or later arising in law or equity, arising out of agreement or imposed by statute, common law or otherwise, including the Avoidance Actions, and any interest of the Debtor in any tax refund, or any deposit, deposit account, certificate of deposit, bank, brokerage or similar account, trust account, reserve account, escrow account or the like.

(o)  "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(p)  "**Confirmation Hearing**" means the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

(q)  "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan.

(r)  "**Contracts**" means all executory contracts and unexpired leases as such terms are used within Bankruptcy Code Section 365 to which the Debtor was a party as of the Petition Date as the case may be.

(s)  "**Costs of Administration**" shall mean the reasonable and necessary costs of the Liquidating Debtor including, without limitation: (a) any actual and necessary costs and expenses incurred after the Effective Date by counsel for the Liquidating Debtor attendant to determination of the amount of a Disputed Claim or prosecuting a Cause of Action; (b) any actual and necessary costs and expenses incurred after the Effective Date by the Plan Trustee in connection with of administering this Plan or complying with applicable non-bankruptcy laws and regulations (including but not limited to the payment of taxes due after the Effective Date); and (c) any expenses incurred in connection with the winding up or dissolution of the Liquidating Debtor.

(t)  "**Debtor**" means JSCo Enterprises, Inc.

(u)  "**Disallowed**," means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of its holder; (b) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (c) a Claim Interest that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

(v)  "**Disposable Income**" shall have the meaning ascribed to such term in Section 1191(d).

(w)  "**Disputed**," when used with respect to a Claim, means a Claim against the Debtor [1] that is listed in the Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; [3] that would be an Allowed Claim but which the Debtor has a Cause of Action that is or could be asserted as a counterclaim to such Claim; or [4] that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been filed. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Disputed Claims.

(x) "**Disputed Claim Reserve**" means the reserve accounts established pursuant to this Plan for funding Disputed Claims if such Claims are ultimately allowed by Final Order and which are to be held pending resolution of Disputed Claims by the entry of a Final Order allowing or disallowing such Disputed Claim[s].

(y) "**Effective Date**" means a Business Day which is fifteen [15] days after the Confirmation Date unless the Confirmation Order is stayed, in which case the Effective Date shall be the first Business Day after which the Confirmation Order becomes a Final Order.

(z) "**Estimated Amount**" means the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim [or class of Claims] against a Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] allowance or distribution; or [b] determining the feasibility of this Plan pursuant to § 1129[a][11], Bankruptcy Code for purposes of its Confirmation.

(aa) "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against the Debtor for any of the purposes as provided in this Plan.

(bb) "**Fee Application**" means an application of a Professional Person under Section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Case.

(cc) "**Fee Claim**" means a Claim under Section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Case.

(dd) "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

(ee) "**General Unsecured Claim**" means any Unsecured Claim against the Debtor that is not an Administrative Claim or a Priority Claim.

(ff) "**Liquidating Debtor**" means the Debtor, on and after the Effective Date.

(gg) "**Objection Deadline**" means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Section 9.1 of the Plan.

(hh) "**Petition Date**" means November 9, 2023.

(ii) "**Plan**" means this First Amended Plan of Liquidation, either in its present form or as it may hereafter be altered, amended or modified from time to time.

(jj) "**Plan Trustee**" shall mean Behrooz Vida or any successor Subchapter V Trustee.

(kk) "**Priority Claim**" means an Unsecured Claim entitled to priority under Section 507.

(ll)     "**Pro Rata Share**" means "the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Disputed Claims, but not including Disallowed Claims.

(mm)     "**Professional Person**" means a person retained or to be compensated pursuant to Section 327, 328, 330, 503[b] or 1103 of the Bankruptcy Code.

(nn)     "**Schedules**" means the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

(oo)     "**Secured Claim**" means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the estates, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order). The defined term "Secured Claim" includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to Sections 506(a) and 553 of the Bankruptcy Code.

(pp)     "**Settlement**" shall mean that certain settlement approved by the Bankruptcy Court by Order granting the Expedited Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Entry of Order Approving Settlement Agreement ("Motion", Docket No. 210) in the Case.

(qq)     "**Settlement Documents**" shall mean all documents necessary to implement the Settlement and make the obligations of the parties to the Settlement legally enforceable.

(rr)     "**Standard Calendar Quarters**" shall mean the following:

Quarter 1: January 1 – March 31

Quarter 2: April 1 – June 30

Quarter 3: July 1 – September 30

Quarter 4: October 1 – December 31

(ss)     "**Trailing Quarter**" means the 3 calendar month period preceding each day on which a payment under this Plan is due to be made to holders of Allowed Class 2 Claims.

(tt)     "**Unsecured Claim**" means a Claim which is not secured by valid, perfected and enforceable Lien that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law.

Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

### 1.2     *Interpretation.*

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time.  The headings in the Plan are for convenience of reference only and

shall not limit or otherwise affect the provisions of the Plan.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

### 1.3   *Liquidating Debtor.*

The Plan shall be liberally construed for the benefit of the Debtor and Liquidating Debtor regarding the interchangeableness of the term "*Debtor*" with the term "*Liquidating Debtor.*"

### 1.4   *History of the Debtor.*

The Debtor is a firm that has provided outsourced accounting solutions to government contractors. It was founded in 2020 as A2Z Associates, Inc. and became EverGlade Global, Inc. in July 2020. Currently, it is called JSCo Enterprises, Inc. as a result of a name change in 2023.  Its founder, Mr. Eric Jia-Sobota ("E. Jia-Sobota"), was the national leader of BDO's Industry Specialty Services Group for a decade prior to founding the Debtor.  He left BDO on April 30, 2020 because he was unwilling to participate in widespread and systemic fraudulent activities and practices.

E. Jia-Sobota originally formed A2Z Associates, Inc. ("A2Z") as a Delaware Corporation in February of 2020.  E. Jia-Sobota held all of the common stock of A2Z.   BDO commenced litigation against E. Jia-Sobota and A2Z in the DC Superior Court (the "DC Litigation"), which litigation is pending under Case No. 2020 CA 002600 B.  In June of 2020, E. Jia-Sobota filed with the Secretary of State, Corporation Division, for the State of Delaware, the First Certificate of Amendment of First Amended and Restated Certificate of Incorporation of A2Z Associates, Inc. amending the name of A2Z to EverGlade Global, Inc. ("Global"). Global remained a Delaware corporation.  In August of 2020, E. Jia-Sobota formed a Delaware limited liability company called EverGlade Consulting, LLC ("Consulting"). Global was the sole member of Consulting and the manager of Consulting. E. Jia-Sobota was the president of Global. E. Jia-Sobota was the CEO, Secretary, and Treasurer of Consulting.

In August of 2021, E. Jia-Sobota transferred fifty-one percent (51%) of the common stock of Global to his husband Jerry Jia-Sobota ("J. Jia-Sobota").  J. Jia-Sobota became president of Global.  E. and Jia-Sobota remained the CEO of Global.  In November of 2022, Global filed with the Texas Secretary of State's Office its Certificate of Conversion of Delaware Corporation Converting to Texas Corporation. Therefore, in November of 2022, Global ceased being a Delaware corporation and now is a Texas corporation.  Similarly in December of 2022, Consulting filed with the Texas Secretary of State's Office its Certificate of Conversion of Delaware Limited Liability Company Converting to Texas Limited Liability Company.  Therefore, in December of 2022, Consulting ceased being a Delaware limited liability company and became a Texas limited liability company.  In May of 2023, Global filed its Certificate of Amendment with the Texas Secretary of State amending its name from Global to JSCo. Enterprises, Inc., the Debtor.

In December of 2022, the Durian Foundation Trust (the "Foundation") was formed and settled by Global. To accomplish the formation of the Foundation, two more entities were created by E. Jia-Sobota and J. Jia-Sobota in Wyoming:  Durian Fiduciary Services, LLC and Durian International, LLC.  On December 7, 2022, Articles of Organization were filed with the Wyoming Secretary of State forming Durian Fiduciary Services, LLC ("Fiduciary").  Paterson likewise was

the sole manager of Fiduciary. On December 13, 2022, Articles of Organization were filed with the Wyoming Secretary of State forming Durian International, LLC ("International"). Initially, according to the Operating Agreement, the single-member of International was Fiduciary as trustee of the Foundation. The manager of International is Fiduciary.

On December 13, 2022, the Durian Foundation Trust Agreement (the "Trust Agreement") was executed by Global as settlor and Fiduciary as trustee. On December 13, 2022, Global entered into that certain Agreement for Purchase and Sale of Membership Interests ("Purchase Agreement") with the Foundation, wherein the Foundation purchased the membership interests of Consulting. The stated consideration for the purchase was $6,582,000.00. The Purchase Agreement provides that the Foundation will pay $6,582,000 in fixed monthly payments in accordance with a Private Annuity Agreement (the "Annuity Agreement").

### 1.5   *Developments in the Bankruptcy Case.*

The Debtor has continued to receive payments under the Annuity Agreement during the Case. The Debtor's primary expenditures have been in connection with the prosecution and defense of the BDO Litigation.

On April 26, 2024, BDO that certain Motion of BDO USA, P.C. for Order Expanding the Duties of the Subchapter V Trustee (Docket No. 97). On July 19, 2024, the Court entered the Agreed Order Granting in Part Motion of BDO USA, P.C. for Order Expanding the Duties of the Subchapter V Trustee ("Expansion Order, Docket No. 140). Pursuant to the Expansion Order, the Subchapter V Trustee's duties under the Bankruptcy Code were expanded to investigate the transfer of the membership interests of Consulting between the Debtor and Durian Foundation. As part of this investigation, the Trustee was to consider, *inter alia*, the terms of the Annuity Agreement; the potential costs, benefits, and risks to the Debtor's bankruptcy estate in seeking to avoid the transfer; and any other issues raised in or related to the Motion as the Trustee deemed appropriate.

The Subchapter V Trustee ultimately issued a report concluding that the transfer of the membership interests of Consulting between the Debtor and Durian Foundation was avoidable under Sections 544 and/or 548 of the Bankruptcy Code, but that avoidance of the transfer posed significant risks to payments continuing under the Annuity Agreement. The Subchapter V Trustee thereafter undertook extensive settlement efforts with the non-Debtor parties and affiliated entities to enhance and improve the consideration received by the Debtor in exchange for the transfer of the membership interests of Consulting between the Debtor and Durian Foundation. These efforts culminated in settlement of the avoidance recoveries and other Causes of Action as outlined in the Settlement. The Settlement was approved by the Court by oral ruling on Friday, April 11, 2025 and such ruling is to be memorialized by subsequent order.

The BDO Litigation is ongoing. BDO has an interlocutory award of over $5 million, but has chosen not to liquidate its Claim in the Bankruptcy Court. The Debtor also has claims pending against BDO in the BDO Litigation.

The Subchapter V Trustee initially appointed in the case, Brad Odell, resigned on April 4, 2025 for reasons unrelated to the Case. Mr. Behrooz Vida was appointed Subchapter V Trustee on April 16, 2025 to replace Mr. Odell.

## ARTICLE 2: CLASSIFICATION OF CLAIMS

**2.1**   *Claims Classified.*

For purposes of organization and all confirmation matters, except as otherwise provided herein, all Claims [except for Administrative Claims] shall be classified as set forth in this Article 2 of the Plan.

**2.2**   *Administrative Claims.*

Administrative Claims against the Debtor shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately on the terms set forth in Article 5 of the Plan.

**2.3**   *Claims.*

The Plan classifies the Claims against the Debtor as follows:

[a]   Class 1:              Any Allowed Secured Claims.

[b]   Class 2:              Any Allowed General Unsecured Claims.

## ARTICLE 3: IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

**3.1**   *Impaired Classes.*

Class 1 is not impaired. Class 2 is impaired.

**3.2**   *Impairment Controversies.*

If a controversy arises as to whether any Claim or any class of Claims is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

## ARTICLE 4 : PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

**4.1**   *Treatment of Claims and Interests.*

### Secured Claims

[a]   *Class 1 – Any Allowed Secured Claims.* Each holder of an Allowed Class 1 Claim shall receive payment of the full amount of its Allowed Secured Claim in the manner provided under applicable non-bankruptcy law.

[b]   *Prepayment –* Any Allowed Secured Claim may be prepaid at any time without penalty, provided that such payment include any accrued interest through the date of such prepayment.

### Unsecured Claims

[f]   *Class 2 – Any Allowed General Unsecured Claims against the Debtor.* In full and final satisfaction of its Allowed Class 2 Claim, each holder of an Allowed General Unsecured

Claim against the Debtor shall be paid its Pro Rata Share of the Disposable Income earned in the immediately preceding Standard Calendar Quarter. Payments shall be made on the 1st day of the first month in each Standard Calendar Quarter ("Disbursement Date") beginning on the first Disbursement Date to occur which is not less than 30 days after the Effective Date and ending on the Disbursement Date in the Standard Calendar Quarter immediately following the final payment under the Settlement.

### ARTICLE 5 : PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN

**5.1**  *Treatment of Administrative Claims.*

Each holder of an Allowed Administrative Claim against the Debtor shall receive on the Effective Date one of the following [i] the amount of such holder's Allowed Claim in one Cash payment; or [ii] such other treatment as may be agreed upon in writing by the Debtor and such holder. Provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business may be paid in the ordinary course of business.

**5.2**  *Procedure for Filing Administrative Claims.*

The holder of an Administrative Claim [including Fee Claims] incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, notice of such Administrative Claim and, if applicable, a Fee Application within 60 days after the Effective Date. Failure to file and serve these documents timely and properly shall result in the Administrative Claim being forever barred and discharged.

**5.3**  *Treatment of Other Priority Claims.*

Each holder of a Priority Claim against the Debtor, other than an Administrative Claim, shall receive a Cash payment in the amount of its Allowed Claim on the Effective Date.

**5.4**  *Treatment of Equity Interests.*

Equity Interest holders shall retain their interests until the Liquidating Debtor is dissolved.

### ARTICLE 6 : ACCEPTANCE OR REJECTION OF THE PLAN

**6.1**  *Classes Entitled to Vote.*

Class 1 is deemed to accept the Plan. Class 2 is entitled to vote to accept or reject the Plan.

### ARTICLE 7 : MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1**  *Execution of Settlement Documents.*

On or before the Effective Date, and as a condition precedent to the Plan, the Debtor and all other parties to the Settlement shall execute the Settlement Documents and deliver same to the Plan Trustee. Any variance from the terms of the Settlement Documents previously tendered to the Bankruptcy Court in the Case shall be disclosed to the Bankruptcy Court at the time of the Confirmation Hearing.

**7.2** *Vesting of Assets.*

Subject to the terms of the Settlement, on the Effective Date, all property of the estate of the Debtor, including but not limited to all Causes of Action, shall vest in the Debtor as Liquidating Debtor, and shall not be assertable by any party other than the Liquidating Debtor. All claims, rights, or Causes of Action are hereby preserved for the benefit of the Liquidating Debtor to be asserted by the Liquidating Debtor in its discretion without the consent or approval of any third party, and without any further order of the Bankruptcy Court, other than as provided for herein.

**7.3** *Plan Trustee Powers.*

Cash on hand as of the Effective Date, shall be immediately turned over to the Plan Trustee for administration pursuant to this Plan. The Plan Trustee shall (i) have the authority vested in the Plan Trustee under the Settlement; (ii) receive all proceeds of all Causes of Action; (iii) account for the funds payable pursuant to the Settlement and all other property turned over to the Plan Trustee; (iv) pay Costs of Administration; (v) execute the Settlement Documents in the capacity of Plan Trustee; (vi) protect and enforce the rights of the Liquidating Debtor under the Settlement by any method deemed appropriate, including by judicial proceedings or under any applicable bankruptcy, insolvency, moratorium or similar law, and general principles of equity; (vii) invest funds under his control; (viii) establish reserves for Disputed Claims, taxes, assessments, Fee Claims, and other expenses necessary for the proper operation of matters incidental to properly administering the Plan; (ix) open and maintain bank accounts in the Liquidating Debtor's name or in his own name as Plan Trustee; (x) purchase insurance coverage the Plan Trustee deems necessary with respect to the liabilities and obligations of the Plan Trustee (in the form of an errors and omissions policy, fiduciary policy or otherwise); (xi) retain and pay professionals and non-professionals to assist the Liquidating Debtor or the Plan Trustee with their respective responsibilities; (xii) take any and all actions authorized or required by the Plan Documents; (xiii) pay the holders of Allowed Claims from Cash Proceeds received by the Plan Trustee in the manner provided under the Plan; (xiv) subject to Bankruptcy Court approval, to settle all Claims of BDO on such terms as the Plan Trustee may approve, provided that such settlement contemporaneously results in the entry of one or more Final Orders liquidating and resolving all Claims against the Liquidating Debtor relating to the BDO Litigation; and (xv) perform any actions required of the Liquidating Debtor under applicable bankruptcy or non-bankruptcy law which the Liquidating Debtor fails to undertake within a reasonable time. To the extent necessary to execute the powers granted herein, the Plan Trustee is hereby appointed a representative of the Liquidating Debtor in accordance with Federal Rule of Bankruptcy Procedure 7070/Federal Rule of Civil Procedure 70, made applicable by Federal Rule of Bankruptcy Procedure 9014.

**7.4** *Disputed Claims.*

[a]    Establishment of Disputed Claims Reserve. Notwithstanding any other provision of this Plan, no assets or property shall be distributed under this Plan on account of any Disputed Claim. For all Disputed Claims, the Plan Trustee shall establish and hold, in trust, distributions to be made to the holders of Disputed Claims [each such reserve being herein called a "Disputed Claims Reserve"] with respect to each Class 1 or 2 Claim for which there exists a Disputed Claim, and shall place in each Disputed Claims Reserve the assets and property to be distributed on account of such Disputed Claim pursuant to this Plan, pending Allowance or Disallowance of such

Claim. Pending entry of a Final Order concerning a Disputed Claim, the Plan Trustee shall pay into the Disputed Claims Reserve all payments provided for under this Plan that would have been required to be delivered to the claimant if the claimant held an Allowed Claim but which must be held in a Disputed Claims Reserve due to the fact that the claimant holds Disputed Claim and not an Allowed Claim. Cash held in any Disputed Claims Reserve shall be held in a segregated interest-bearing trust account. To the extent practicable, the Plan Trustee may invest the Cash in any Disputed Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.

[b]    Determination of Disputed Claims Reserve. The Bankruptcy Court may, at any time, determine for each Class 1 or 2 Claim, the amount of assets and property sufficient to fund each Disputed Claims Reserve established with respect to any such class. The Bankruptcy Court may estimate and determine by an Estimation Order the Estimated Amount of Claims in each class for which a Disputed Claims Reserve has been established. Any claimant holding a Disputed Claim so estimated will have recourse only to undistributed assets and property in the Disputed Claims Reserve for the class in which such Disputed Claim has been placed and not to the Liquidating Debtor or any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[c]    Return of Assets. Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Disputed Claims Reserve for any class of Claims remaining after the resolution of all disputes relating thereto shall be returned to the Plan Trustee for distribution in accordance with this Plan.

[d]    Withholding of Taxes. The Plan Trustee shall withhold from any assets and property distributed under this Plan any assets and or property which must be withheld for federal, state and local taxes payable by the Person entitled to such property to the extent required by applicable law.

[e]    Expenses Associated with Disputed Claims. For the avoidance of doubt, any expenses incurred in connection with the litigation concerning a Disputed Claim shall be deemed to be a Cost of Administration necessary for the continuation, preservation, or operation of the business of the Debtor or Liquidating Debtor as the case may be.

### 7.5    *Estimated Claims.*

Except as otherwise provided herein, the Court may estimate for purposes of allowance or distribution, [i] any Disputed Claim or unliquidated Claim, or [ii] any portion or part of a Claim that is, itself, unliquidated. Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

### 7.6    *Claims on File; No Allowance of Untimely Claims.*

The Debtor is relying on the formal proofs of Claim on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan. No informal proof of claim shall be deemed to have been filed in this Case.

### 7.7    *Compensation of Plan Trustee.*

The Plan Trustee shall be compensated in the amount provided by Section 326 of the Bankruptcy Code and shall be reimbursed for any actual necessary expenses incurred in connection with his duties as Plan Trustee. The Plan Trustee shall file a notice of such compensation on the docket in the Case on no less than a semi-annual basis. Nothing shall preclude the Plan Trustee from being engaged separately as his own counsel on an hourly basis, or from engaging outside counsel on an hourly or contingency fee basis in appropriate circumstances.

### 7.8    *Dissolution of the Debtor.*

After all payments due under the Plan have been made, the Liquidating Debtor shall take all necessary steps to wind down and dissolve in the manner provided by applicable non-bankruptcy law.

### 7.9    *Management of the Debtor.*

The sole officer and director of the Liquidating Debtor will be E. Jia-Sobota, but management will not draw any compensation from the Liquidating Debtor. Management of the Debtor shall have responsibility for (i) compliance with federal, state and local laws pertaining to the Liquidating Debtor (including the filing of tax returns) and other responsibilities described in the Plan; and (ii) overseeing the Liquidating Debtor's participation in the BDO Litigation, subject to the Plan Trustee's power to recommend a settlement to the Bankruptcy Court consistent with Section 7.3 of the Plan.

### 7.10    *Case Administration.*

Beginning on the Effective Date and continuing through the date that a final decree closing the Case is entered under Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Plan Trustee shall possess the rights of a party in interest under Section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Case. For all such matters, the Plan Trustee shall: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court; (ii) be entitled to notice and opportunity for hearings and be entitled to participate in all matters brought before the Bankruptcy Court; (iii) be entitled to make distributions under the Plan without further Bankruptcy Court approval, and (iv) be entitled to request the Bankruptcy Court to enter a final decree closing the Case.

## ARTICLE 8 : PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1    *Distributions.*

Any distributions and deliveries to be made under the Plan shall be made on the Effective Date, as otherwise provided for herein, or as the Bankruptcy Court may order.

### 8.2    *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Debtor have been notified in writing of a change of address]. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor are notified in writing

of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  All unclaimed property shall revert to the Liquidating Debtor or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

### 8.3  *Time Bar to Cash Payments.*

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Plan Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE 9:
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED AND DISPUTED CLAIMS UNDER THE PLAN

### 9.1  *Objection Deadline.*

As soon as practicable, but in no event later than sixty [60] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.  Notwithstanding the foregoing sentence, as to any Claim which is filed after the Effective Date, an objection to such Claim shall be filed on or before sixty [60] days after the date on which such Claim is filed.

### 9.2  *Prosecution of Objections.*

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all claim objections may be made by the Liquidating Debtor.

### 9.3  *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.  Payments and distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

## ARTICLE 10:
## PROVISIONS GOVERNING EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN

### 10.1  *Rejection of Contracts.*

The Plan constitutes a motion by the Debtor to reject, as of the Effective Date, all Contracts other than those specifically assumed by separate motion.

**10.2** *Bar to Rejection Damages.*

If the rejection of a Contract by the Debtor results in damages to the other party or parties to such Contract, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor or its respective property or its agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before sixty [60] days following the Effective Date.

**10.3** *Insurance Policies.*

Notwithstanding anything in the Plan or Sections 10.1 and 10.2 of the Plan, all insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation Date. All payments upon such policies are current; no cure payments are necessary.

### ARTICLE 11 : RETENTION OF JURISDICTION

**11.1** *Scope of Jurisdiction.*

Pursuant to Sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Case, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Case and the Plan. Without limitation, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

[a] to modify this Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;
[b] to enforce and interpret the terms and conditions of this Plan;
[c] to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Liquidating Debtor;
[d] to enter an order concluding and terminating the Case;
[e] to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of this Plan, including the adjustment of the date[s] of performance under this Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan may be substantially realized thereby;
[f] to approve all Fee Claims;
[g] to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to this Plan or the transactions contemplated hereby against the Debtor;
[h] to determine any and all applications pending on Confirmation for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;
[i] to determine such other matters and for such other purposes as may be provided in the Confirmation Order;
[j] to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

- [k] to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;
- [l] to hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;
- [m] to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;
- [n] to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;
- [o] to hear and determine any and all actions initiated by the Plan Trustee;
- [p] to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;
- [q] to approve the settlement of any Claim related to the BDO Litigation; and
- [r] to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, Bankruptcy Code.

**11.2** *Failure of the Bankruptcy Court to Exercise Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Case, including the matters set forth in Section 11.1 of the Plan, this Article 11 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### ARTICLE 12: MISCELLANEOUS PROVISIONS

**12.1** *Discharge.*

No discharge is sought as this Plan is a plan of liquidation.

**12.2** *Injunctions.*

**FROM AND AFTER THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS SHALL BE AND ARE HEREBY PERMANENTLY RESTRAINED AND ENJOINED FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM AGAINST THE LIQUIDATING DEBTOR OR ITS ASSETS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING ON ACCOUNT OF ANY CLAIM BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE LIQUIDATING DEBTOR OR ITS ASSETS EXCEPT PURSUANT TO AND IN ACCORDANCE WITH THIS PLAN; (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE LIQUIDATING DEBTOR OR ITS ASSETS; (D) ASSERTING ANY CONTROL OVER, INTEREST, RIGHTS OR TITLE IN OR TO ANY OF THE**

**LIQUIDATING DEBTOR'S ASSETS EXCEPT AS PROVIDED IN THIS PLAN; AND (E) PERFORMING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN; PROVIDED, HOWEVER, THAT THIS INJUNCTION SHALL NOT BAR ANY HOLDER OF AN CLAIM FROM ASSERTING ANY RIGHT GRANTED PURSUANT TO THIS PLAN; PROVIDED, FURTHER, HOWEVER, THAT EACH HOLDER OF A ALLOWED OR DISPUTED CLAIM SHALL BE ENTITLED TO ENFORCE THE PROVISIONS OF AND ANY RIGHTS GRANTED UNDER THE PLAN.**

### 12.3   *De Minimis Distributions.*

No distribution of less than $25.00 shall be made to any holder of an Allowed Claim. Such undistributed amount will be retained by the Liquidating Debtor.

### 12.4   *Automatic Stay*.

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor and its assets. As of the Effective Date, the discharge and injunction in Section 12.2 above shall become effective.

### 12.5   *Interest and Penalties.*

Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing from and after the Petition Date on an Allowed Claim shall be paid on such Allowed Claim.

### 12.6   *Bankruptcy Restrictions.*

From and after the Effective Date, the Liquidating Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, Section 363 or 364]. The Liquidating Debtor may conduct its affairs in such manner as is consistent with entities not in bankruptcy without the need of seeking Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Liquidating Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

### 12.7   *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtor, or any other Entity, [ii] to prejudice in any manner the rights of the Debtor, or any other Entity, or [iii] to constitute any admission by the Debtor, or any other Entity.

### 12.8   *Governing Law.*

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Case, except as may otherwise be provided in such agreements, documents and instruments.

### 12.9   *Modification of Plan.*

Except as provided in Section 1127(e) of the Bankruptcy Code, modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that [i] the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, [ii] the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications. The Plan may be modified after substantial consummation of the Plan in accordance with Section 1127(e) of the Bankruptcy Code.

### 12.10   *Creditor Defaults.*

Any act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Liquidating Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Liquidating Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may [a] designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70 or [b] make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

### 12.11   *Default by the Debtor.*

In the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred by the Debtor, such creditor must provide the Debtor with written notice ["**Notice**"] of such default to the following addresses:

TO THE PLAN TRUSTEE
Behrooz P. Vida
3000 Central Dr.
Bedford, TX 76021

TO THE DEBTOR
JSCo Enterprises, Inc
2700 Post Oak Blvd., Ste. 2100
Houston, Texas 77056

TO COUNSEL FOR THE DEBTOR
Spector & Cox PLLC

12770 Coit Road, Ste. 850
Dallas, TX 75251

Notices shall be sent via overnight mail or similar same-day or express delivery. If the default asserted in the Notice remains uncured on the sixtieth [60th] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### 12.12  *Severability.*

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or transaction, the Debtor may modify the Plan in accordance with Section 12.9 of the Plan so that such provision shall not be applicable to the holder of any Claim. Such a determination of unenforceability shall not [1] limit or affect the enforceability and operative effect of any other provision of the Plan or [2] require the resolicitation of any acceptance or rejection of the Plan.

### 12.13  *Integration Clause.*

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties-in-interest upon the matters herein.

### 12.14  *Exculpations.*

Neither the Debtor, nor its agents or attorneys, shall have or incur any liability to any holder of a Claim for any act, event or omission in connection with, or arising out of, the Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

### 12.15  *Liquidation Analysis.*

The Plan is a liquidating plan, and as such the return to holders of Allowed Claims should mirror the returns to creditors if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

DATED:    April 21, 2025.

*/s/ Howard Marc Spector*
Howard Marc Spector
TBA #00785023
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
[214] 365-5377
FAX: [214] 237-3380
EMAIL: hspector@spectorcox.com

COUNSEL FOR THE DEBTOR